IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02611-RBJ

CORAL LYN DASILVA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision denying claimant Coral Lyn DaSilva's application for Social Security disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

## I. Standard of Review

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not

substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II. Background

Ms. DaSilva, who was born on October 9, 1987, lives in Loveland, Colorado. She has previously worked as a server, sandwich maker, pet salesperson, and cook, but she has not worked since her amended alleged onset date of November 11, 2009. The claimant has a history of mental health problems, including a number of suicide attempts.

### A. Procedural History

In June 7, 2011, Ms. DaSilva filed an application for disability insurance benefits (the "SSDI claim") and supplemental security income (the "SSI claim") under Titles II and XVI of the Social Security Act, alleging disability beginning on August 1, 2002. The claim was initially denied on September 15, 2011. The claimant then filed a request for a hearing, which was held on December 18, 2012 in front of Administrative Law Judge Martha Stroup, and amended her alleged onset date to November 11, 2009. The ALJ issued a decision denying the claimant's request for benefits on January 2, 2013. The Commission denied her request for review on July 22, 2014, and Ms. DaSilva filed a timely appeal in this Court.

### B. The ALJ's Decision

The ALJ issued an unfavorable opinion after evaluating all of the evidence according to the Social Security Administration's standard five-step process. First, she found that the claimant met the insured status requirements of the Social Security Act through December 31, 2010. R. at 21. Next, at step one, she found that Ms. DaSilva had not engaged in substantial gainful activity since her amended alleged onset date of November 11, 2009. R. at 21. At step two, the ALJ found that the claimant had the following severe impairments: fibromyalgia,

irritable bowel syndrome, non-ulcer dyspepsia, reflux esophagitis, bipolar disorder, post-traumatic stress disorder, obsessive-compulsive disorder, panic disorder with agoraphobia, conversion disorder, somatization disorder, borderline personality disorder, and a history of polysubstance abuse. R. at 21–22. At step three, the ALJ concluded that Ms. DaSilva did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 22. She then found that the claimant has the residual functional capacity ("RFC") to perform light exertional work, except she can only frequently handle or finger bilaterally; she can perform only simple, repetitive unskilled work that requires no more than simple decision-making; she can only occasionally interact with co-workers; and she should not work with the public as an essential feature of her job duties. R. at 22. Turning to step four, the ALJ found that Ms. DaSilva was not capable of performing any past relevant work. R. at 26. Finally, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that the claimant could perform. R. at 26. She thus concluded that she had not been under a disability. R. at 27.

### III. Discussion

The claimant contends that the ALJ made the following errors in her opinion denying benefits: (1) at step three, the ALJ failed to obtain a medical opinion on the issue of medical equivalence, (2) the ALJ's RFC determination is not supported by substantial evidence, (3) the ALJ failed to properly consider several medical opinions, and (4) the ALJ's step five analysis is flawed. The Court will address each in turn.

#### A. The ALJ's Step Three Analysis

First, Ms. DaSilva argues that the ALJ was required to obtain a medical expert opinion on the question of medical equivalence at step three, and that she failed to do so. Under SSR 96-6p,

"longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight." In the present case, the ALJ cited the Disability Determination form completed by Disability Determination Services (DDS) physician Dr. Rubinowitz and DDS psychologist Dr. Frommelt in August and September of 2011, which found that Ms. DaSilva was not disabled. R. at 22 (citing R. at 72–88). As part of the form, both Dr. Rubinowitz and Dr. Frommelt evaluated the claimant's RFC; together they concluded that she could perform light, unskilled work. R. at 83–87. Given these findings, the ALJ reasoned that "[i]f it is determined that the claimant meets or equals a given listing, then a favorable determination is made at the DDS level. Any further assessment made by [DDS doctors] constitutes an implied medical opinion that the claimant does not meet or equal a listing." R. at 22. She thus concluded that "the assessments of [Dr. Rubinowitz and Dr. Frommelt] are medical opinions that the claimant does not meet or equal ay listing of impairment." R. at 22.

Ms. DaSilva first argues that the ALJ's reliance on the implied findings of the DDS doctors was improper, and that the ALJ "is required to receive into evidence an express opinion on the issue of medical equivalence." ECF No. 15 at 12. That is incorrect. As the Eighth Circuit has explained,

> an agency physician necessarily gave the requisite opinion on medical equivalence, albeit not explicitly, where the physician stated that an evaluation of residual functional capacity was required. Because no assessment of RFC would have been necessary if the physician had found that the claimant's condition was equivalent to a listed impairment, we [have] reasoned that the physician implicitly rejected a determination of equivalence.

*Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). *See also Deegan v. Colvin*, No. 12-CV-01945-REB, 2013 WL 1827747, at *4 (D. Colo. Apr. 30, 2013). Thus the claimant's first argument fails as a matter of law.

Next, Ms. DaSilva argues that the ALJ could not rely on the cited DDS assessments because it is not clear that either doctor signed the Disability Determination and Transmittal form, as required under SSR 96-6p. *See* R. at 71 (signature typed in as "RO DDS"). However, "[o]ther documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that [an] opinion has been obtained at the first two levels of administrative review." SSR 96-6p. Because both doctors signed the records documenting their findings, the Court finds that the apparent lack of signatures on the Disability Determination and Transmittal form itself is unproblematic. *See* R. at 80, 84 (showing electronic signatures of Dr. Rubinowitz and Dr. Frommelt).

Lastly, the claimant points out that the DDS determination of non-disability cited by the ALJ was for the SSI claim only. *See* R. at 22 (citing R. at 72–88 (finding that claimant was not disabled at the time of the doctors' review in August and September of 2011)). As the claimant's brief notes, the DDS determination for the SSDI claim found that there was "insufficient evidence" to determine if Ms. DaSilva had been disabled during the period in which she was eligible for benefits, which would require a finding that she had been disabled prior to her date last insured of December 31, 2010.[1] R. at 69. Reading the two forms together, Dr. Rubinowitz and Dr. Frommelt concluded that they did not have enough evidence to determine whether Ms.

---

[1] Contrary to the government's assertion that Dr. Frommelt's conclusion on the SSI form encompassed the period before December of 2010, both doctors again noted on the SSI form that there was insufficient evidence to make a determination for that time frame. R. at 80, 81.

DaSilva had been disabled from November 11, 2009 to December 31, 2010,[2] but they did find that she was not disabled at the time of their review in August and September of 2011. *See* R. at 69, 87. The ALJ, however, relied on the doctors' opinion in finding that the claimant did not meet or equal a listing for the entire period from November 11, 2009 to January 2, 2013, the date of her decision. Thus, the ALJ erred in failing to obtain a medical expert opinion on the issue of equivalence addressing the period from November 11, 2009 to December 31, 2010. Furthermore, I cannot find this error harmless—as the government argues that it was—in light of the problems with the ALJ's RFC determination discussed below. Accordingly, the ALJ's opinion must be remanded on this basis.

### B. The RFC Finding

Next, Ms. DaSilva argues that the ALJ's RFC determination was not supported by substantial evidence. After "careful consideration of the record," the ALJ found that the claimant has the RFC to perform light exertional work, except she can only frequently handle or finger bilaterally; she can perform only simple, repetitive unskilled work that requires no more than simple decision-making; she can only occasionally interact with co-workers; and she should not work with the public as an essential feature of her job duties. R. at 22. Ms. DaSilva contends that this finding was not support by substantial evidence because the ALJ failed to make a function-by-function assessment of both her physical and mental abilities. ECF No. 15 at 14 (citing SSR 96-8p).

The Court first notes that, in making her RFC determination, the ALJ "[gave] greatest weight to the medical opinions of Dr. Frommelt and Dr. Rubinowitz, which are reflected in [the

---

[2] The doctors' opinion actually concerns the broader period from the claimant's original alleged onset date of August 1, 2002 to August and September of 2011. However, because Ms. DaSilva later amended her alleged onset date, the relevant question for purposes of the SSDI claim is whether she was disabled between the amended date of November 11, 2009 and her date last insured of December 31, 2010.

RFC finding]." R. at 23.  However, the ALJ's explanation makes clear that she considered only the doctors' SSI disability determination form, not the one they completed in evaluating Ms. DaSilva's SSDI application.  *See* R. at 23.  The ALJ's exclusive reliance on the SSI form is problematic for the same reason discussed above in relation to step three: Dr. Frommelt and Dr. Rubinowitz found that there was insufficient evidence to determine whether the claimant had been disabled prior to her last insured date.  R. at 69.  Because the opinions of Dr. Frommelt and Dr. Rubinowitz served as the basis for the ALJ's RFC determination, the Court finds that the ALJ's findings about the plaintiff's RFC prior to December 31, 2010 were not supported by substantial evidence, and the SSDI claim must be remanded on this basis.

Turning to the claimant's other arguments, Ms. DaSilva contends that the ALJ improperly rejected her testimony that she can walk for only about 15 minutes, can stand only for about five minutes, and can sit for up to half an hour.  ECF No. 14–15.  However, the ALJ discounted Ms. DaSilva's statements because they were inconsistent with Dr. Dolan's and Dr. Rubinowitz's assessments, her self-reported daily activities were inconsistent with the degree of limitation she claimed, and often statements she made at different times were inconsistent with each other.  R. at 23–24.  These are all proper considerations under the relevant regulations, *see* 20 C.F.R. § 416.929(c), and I therefore find that, for purposes of the SSI claim, the ALJ's evaluation of Ms. DaSilva's physical RFC was supported by substantial evidence.

The claimant also argues that the ALJ's mental RFC finding was flawed.  ECF No. 15 at 16–21.  As noted above, the ALJ limited Ms. DaSilva to simple, repetitive unskilled work that requires no more than simple decision-making, no more than occasional interaction with co-workers, and no interaction with the public as an essential feature of her job.  R. at 22.  This finding was based largely on Dr. Frommelt's report, which the ALJ gave "greatest weight."  R. at

23. The ALJ also cited recent treatment records reflecting normal mental status examinations during a period when the claimant was taking her medication, as well as evidence that she left her last job because of her turbulent relationship with her boyfriend (who was the manager at the restaurant where she worked), not because she became disabled. R. at 24, 25. The Court finds that the ALJ properly relied on these sources, which support the limitations included in the RFC determination, and her assessment of the claimant's mental RFC was therefore supported by substantial evidence for purposes of the SSI claim. *See Wall*, 561 F.3d at 1052 (substantial evidence requires "more than a scintilla, but less than a preponderance"). The relevant portion of the claimant's brief does little more than invite the Court to reweigh the evidence, and the Court declines to do so. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (Plaintiff's argument . . . constitutes an invitation to this court to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner, an invitation we must decline.").

In sum, the Court finds that the ALJ's RFC determination was supported by substantial evidence for purposes of the SSI claim, but not for purposes of the SSDI claim. The decision must therefore be remanded for a determination of whether the claimant was disabled prior to her date last insured of December 31, 2010.

### C. The Weight Assigned to Various Medical Opinions

Next, Ms. DaSilva argues that the ALJ improperly weighed the opinions of Dr. Good, Dr. Rubinowitz, Dr. Frommelt, Dr. Kabat, and Dr. Pomerantz. The Court will address each in turn.

#### 1. Dr. Good

Dr. Good was the claimant's treating psychotherapist from April of 2009 through September of 2010. R. at 1033. In analyzing a treating physician's opinion, the ALJ must first

determine whether it should be afforded controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). An opinion "must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* If the ALJ finds that an opinion is not entitled to controlling weight, she must go on to determine what weight to assign it. *Id.* At this second step of the analysis, the ALJ must "make clear how much weight the opinion is being given . . . and give good reasons . . . for the weight assigned." *Id.* The factors relevant to this determination include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the relevant area; and (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion. *Id.* at 1131.

      Here, the ALJ gave "little weight" to the opinion of Dr. Good, who provided a "narrative summary" of Ms. DaSilva's treatment,[3] in which she stated that the claimant "exhibits marked distress and severe impairment in function." R. at 1033. Her letter also notes that the diagnoses supported by her assessment of the claimant were major depressive disorder, somatization disorder, posttraumatic stress disorder, and bipolar disorder. R. at 1034. Furthermore, Ms. DaSilva's "chronic somatic concerns lead to increased fatigue and weakness and render her incapable, oftentimes, [of] [ful]filling minimal expectations. . . . She exhibits high degrees of anxiety in numerous realms." R. at 1033. As a result of the claimant's posttraumatic stress disorder, "her ability to concentrate and attend is significantly compromised." R. at 1033. The

---

[3] Dr. Good has a policy of not releasing her clinical records, so she offered the narrative summary as a substitute for treatment records. R. at 1033.

ALJ assigned the opinion little weight because it was not supported by any objective medical evidence and the doctor's conclusion that the claimant has "severe" impairments was "non-specific." R. at 24. She further commented that Dr. Good had not provided any "further specific limitations" and that "[c]ertainly, the claimant has severe medical impairments as established by evidence elsewhere in the record, but the question remains as to the extent of the severity of the impairments." R. at 24.

The claimant contends that the ALJ did not properly apply the relevant legal standards in evaluating Dr. Good's opinion, and the Court agrees. As an initial matter, the ALJ mischaracterized the doctor's assessment of Ms. DaSilva by focusing only on the "non-specific assertion of a 'severe' impairment in function" and noting that the opinion contained "[no] mention of any further limitations." R. at 24. This is simply incorrect; the doctor opined that the claimant experienced increased fatigue, was unable to meet even basic expectations, exhibited a high degree of anxiety, and struggled with concentration. R. at 1033–34. Thus the ALJ erred by ignoring the specific limitations discussed in Dr. Good's opinion. Moreover, while she properly declined to afford the opinion controlling weight because it was not supported by objective medical findings, the ALJ did not offer any real discussion of the factors relevant to the determination of what weight to give it at the second step of the weight analysis. *See* R. at 24. Thus, the ALJ failed to "give good reasons . . . for the weight assigned," *Krauser*, 638 F.3d at 1330, and her opinion must be remanded on this basis.

### 2. **Dr. Rubinowitz and Dr. Frommelt**

The claimant also contends that the ALJ improperly weighed the opinions of Dr. Rubinowitz and Dr. Fommelt, both of whom reviewed Ms. DaSilva's file and completed a Disability Determination form. *See* R. at 72–88. The ALJ afforded these opinions "greatest

weight" because "they are most consistent with the record overall, and they are well supported by their discussion of the evidence." R. at 23. These were appropriate considerations, and the ALJ's decision to afford the opinions "greatest weight" was in line with the applicable legal standards. *See* SSR 96-6p (an ALJ must consider "findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists . . . when making a decision in a particular case"); 20 C.F.R. § 416.927(c) (supportability and consistency are factors relevant to the analysis of what weight to afford a medical source opinion). I thus decline to remand the opinion on this basis.[4]

### 3. Dr. Kabat

Next, Ms. DaSilva argues that the ALJ improperly discounted Dr. Kabat's opinion because she found that his conclusions were inconsistent with the GAD score of 55 shown in his treatment notes. Whether a doctor's opinion is well-supported by relevant evidence is an appropriate consideration under the applicable regulations, *see* 20 C.F.R. § 416.927(c), and the Court therefore finds the ALJ's discussion of Dr. Kabat's opinion unproblematic. While the claimant is correct that GAF scores should not be equated with a particular listing level severity or RFC, that is beside point here, where the ALJ only relied on the GAF score to find that the doctor's conclusions were inconsistent with his own treatment notes.

### 4. Dr. Pomerantz

---

[4] The claimant argues that the additional limitation to only frequent use of her hands that the ALJ included in her RFC determination is not supported by substantial evidence because it was not included in Dr. Rubinowitz's report. While that is true, the Court will not find reversible error where an ALJ's departure from a medical opinion benefits the claimant. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Furthermore, the claimant herself argues at another point in her brief that her use of her hands is limited. *See* ECF No. 15 at 30. Separately, it appears that Ms. DaSilva is correct that Dr. Frommelt wrongly noted that she had previously worked as a manager. *See* R. at 84. However, this minor detail does not affect his overall conclusion, and the Court finds the error harmless.

Lastly, the claimant takes issue with the ALJ's analysis of Dr. Pomerantz's opinion, which the ALJ accepted only to the extent that it was consistent with Dr. Frommelt's findings. *See* R. at 25. She discounted the intensity of the symptoms that Ms. DaSilva reported to Dr. Pomerantz because they "[did] not appear to reflect the frequency or severity of interpersonal difficulties the claimant [had] alleged to the Social Security Administration or those alleged in the statement of Dr. Kabat and Mr. Guinn from July 2011," and they were contradicted by objective medical findings in the record—namely treatment records from Rocky Mountain Primary Care and Dr. Ives' report. R. at 25. Again here, the ALJ's reasons for discounting the opinion were appropriate under the applicable regulations, *see* 20 C.F.R. § 416.927(c), and I find no error in her analysis.

### C. The ALJ's Step Five Analysis

Ms. DaSilva also points to several alleged errors in the ALJ's discussion at step five. First, she notes that the assembler job requires workers to "[f]requently work[] at [a] bench as [a] member of [an] assembly group assembling one or two specific parts and passing unit[s] to another worker." D.O.T. 706.684-022. Ms. DaSilva argues that this requirement is inconsistent with the ALJ's RFC finding that she can only occasionally interact with co-workers. *See* R. at 22. However, the VE testified that someone who should "have limited co-worker [inter]action" could work as an assembler, R. at 55, and the ALJ was only required to inquire further if there was an apparent unresolved conflict between the VE's testimony and the D.O.T. job description, SSR 00-4p. The Court finds that there was not such a conflict—it is not at all clear that sitting at a bench with co-workers and periodically passing along a finished part constitutes any degree of meaningful interaction. *Cf. Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011) ("A conflict is apparent if it is so obvious that the ALJ should have picked up on it without any assistance.").

Thus the ALJ was entitled to rely on the VE's testimony, and I am unpersuaded by the claimant's argument on this point.

Next, Ms. DaSilva argues that the ALJ's finding that she could work as an assembler or as a hand packager is inconsistent with the finding that she could perform only a "limited range of light exertional work" because these jobs require the "ability to work at a production pace." ECF No. 15 at 29 (referring to R. at 26). Specifically, the claimant contends, the ALJ failed to consider the extent to which the occupational base was eroded by the limitation to only a limited range of light work, as required under SSR 83-12. However, this line of argument misinterprets the ALJ's analysis. As the ALJ's step five discussion makes clear, she meant only that the claimant was limited to a particular range of light work because of the non-exertional limitations included in her RFC determination, not that some other unspecified limitations also existed, as the claimant seems to argue. *See* R. at 26 ("To determine the extent to which the claimant's non-exertional limitations erode the unskilled, light occupational base, the undersigned asked the vocational expert whether jobs exist in the national economy for a person of . . . [the RFC] set forth above."). Because the ALJ included all of the limitations listed in her RFC finding in questions to the VE, *see* R. at 55–56, there is no inconsistency in the ALJ's analysis. Moreover, the requirement of working at a production pace does not create an apparent conflict between the VE's testimony and the D.O.T. that the ALJ was required to explore further. *See* SSR 00-4p. I thus decline to remand the decision on this basis.

Lastly, Ms. DaSilva argues that she cannot perform the assembler job because she cannot use her hands to the extent required by the job. The ALJ limited the claimant to frequent "handl[ing] or finger[ing] bilaterally." R. at 22. It is not obvious that this restriction creates an apparent conflict with the job's requirement that the work "[a]ddress[] by hand or typewriter,

envelopes, cards, advertising literature, packages, and similar items for mailing." D.O.T. 209.587-010.  Indeed, the claimant does not really argue as much; her brief focuses on evidence in the record that she believes shows she cannot perform the job, rather than focusing on the ALJ's RFC determination.  *See* ECF No. 15 at 30.  However, because I have determined that the opinion must be remanded for other reasons, the ALJ should take another look at the addresser job on remand.

### IV. <u>Conclusion</u>

In sum, the ALJ's step three and FRC findings regarding the claimant's SSDI claim were not supported by substantial evidence, she failed to properly weigh Dr. Good's opinion, and she should take another look at the requirements of the addresser job. However, it is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at this time.  *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).  Therefore, the decision of the Commissioner is REVERSED and REMANDED for further findings.

DATED this 24th day of August, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge